[Crim. No. 3188.  Second Appellate District, Division Two.—June 12, 1939.]

THE PEOPLE, Respondent, v. FRANCIS KRUG et al., Defendants; VAHAN REJEBIAN, Appellant.

John S. Cooper for Appellant.

Earl Warren, Attorney-General, and R. S. McLaughlin, Deputy Attorney-General, for Respondent.

The following opinion was prepared by the late Mr. Presiding Justice Crail and is adopted and published as the opinion of the court.

THE COURT.—The defendant and a codefendant were charged with the crime of burglary, to which they pleaded "not guilty". Two months later each defendant changed

his plea of "not guilty" to "guilty of second degree burglary" and filed applications for probation. Probation was denied and the defendant was sentenced to San Quentin. Thereafter the defendant moved to vacate or modify the judgment, which was denied, and it is from this order the appeal is taken.

In support of his motion the defendant filed an affidavit in which he said that prior to the time of pleading "guilty" he had been promised a jail sentence by certain officers of the police force, and in which he further said, "We talked over our affairs and the recoveries I had and was making, and many times I asked Officers Quinn and Curtis if I was going to get a jail sentence and they said yes. At this time one of my attorneys was Mr. A. Benjamin. He was present at some of these meetings with Officers Quinn and Curtis, when these officers promised to explain to the district attorney and the court about my helping to make these recoveries, and as well, that I had been promised a County Jail sentence. At the time my plea was entered I did so because I was relying on this particular advice and would not have done so had I not been promised that I would get a jail sentence with or without probation. At many and at different times and at the last, I did believe that this was the sentence I would receive and I would not have made the plea that I did make had I not relied on these promises, . . . "

The defendant relies upon the case of *People* v. *Schwarz*, 201 Cal. 309, 314 [257 Pac. 71], and the cases therein cited, and in that case the court said: "It may be stated from the above authorities that it is now well settled in this state that where on account of duress, fraud, or other fact overreaching the free will and judgment of a defendant he is deprived of the right of a trial on the merits, the court in which he was sentenced may after judgment and after the time for appeal has passed, if a properly supported motion is seasonably made, grant him the privilege of withdrawing his plea of guilty and of reassuming the situation occupied by him before a plea of any kind was entered." It should be noted, however, that the court in the same paragraph also says, "that this exceptional remedy applies only where no trial has been had on the merits and only upon a strong and convincing showing of the deprivation of legal rights by extrinsic causes."

At the hearing of the motion to set aside the judgment the following proceedings, among others, were had:

"The Court: On October 28, 1938, a motion was made to reopen the probation hearing, the defendant Rejebian was in court with his counsel, John E. Glover, the People were represented by Charles H. Matthews, Deputy District Attorney, at which time Mr. Glover made the motion to reopen the probation hearing on the grounds stated in his written motion, and as part of that hearing that took place at that time the court made this statement: 'Well, in other words, you want this record to show that before this defendant was brought into court, certain promises were made to him by certain police officers who were attempting to usurp the powers of the court; is that correct? Mr. Glover: No, not at all, your Honor. I expect to prove at this time, if the court will allow me to put testimony in evidence, that officers saw the defendant at the time he was in jail, at which time he was under $20,000.00 bail; that they saw the defendant in accordance with instructions and authority from their superior officer in the police department. That the promises held out to the defendant were subject, naturally, to the approval of the court, and the defendant was informed that the court didn't have to or would not necessarily follow the recommendations or the promises made; but nevertheless that the court would be apprised of the promises that were made. However, I stated, with the distinct understanding that the court could reject them or accept them at his own pleasure.'

"That statement came out at the former hearing.

"Mr. Cooper: Thank you. Are there any questions that your Honor desires to ask of this defendant now, sir?

"By the Court: Q. Mr. Glover at no time told you you would get a County Jail sentence as the result of the conference held in my office? [which was before the defendant pleaded guilty]. A. No, he did not, Mr. Glover did not. Q. He was the last person who talked to you after that conference, wasn't he? You never talked to any of the police officers before the time of entering the plea? A. I talked to the police officers. Q. After you talked to Mr. Glover that morning? A. No, not that morning, no. Q. And Mr. Glover told you distinctly at that time it was entirely up to the court what sentence he wanted to give, isn't that right?

320

A. Mr. Glover told me that, yes, sir. Q. With that in mind, you entered your plea of guilty? A. I asked him then, the question, very distinctly, if J— I said, 'If I plead guilty, the court can send me to the penitentiary'; he said, 'That will all be straightened out probably later', he said, 'so, at this time, better probably plead guilty'. Q. When did he make that statement now? A. When I talked to him in the hallway. Q. Outside the court? A. This gate right here. Q. Don't you recall he just had an opportunity to say just a couple of words to you, I followed him right out of the chambers, with the police officers? A. I talked with him very shortly, a very few words. Q. Do you want to tell this court he made that statement? If you do, I will subpoena him. A. He never promised me anything. I asked him if he understood it, and he said it will be— Q. Mr. Glover made that statement, inferring there was a deal made with this court? A. No, no deal of any kind. Q. Let's get that straight right now. You tell us the statement Mr. Glover made to you. A. Mr. Glover merely told me that— Q. Take your time, and think, and don't have any question about it. A. 'You are going to plead guilty to the charge,' and I said, 'By pleading guilty, I will have no assurance what will happen, have I?' He said, 'No, you have no assurance' and he said 'Just plead guilty, and say nothing, and it will be all there is to it right now, and apply for probation.' You see I followed his advice, and pled guilty, when you asked me if there was— if anyone had promised anything, on his advice, I said no. Q. There was no assurance given you at any time by Mr. Glover or any inference given you by anyone that the court would ever send you to the County Jail? . . . A. Not in the courtroom, after I left here. The Court: In fact, you knew very well, at the time you entered the plea of guilty, it was entirely up to this court as to what sentence you were going to get, isn't that right? A. That was the advice of my attorney, yes. Q. You knew that to be the fact, didn't you? A. Yes, your Honor.''

It thus appears obvious that at the time the defendant changed his plea from ''not guilty'' to ''guilty'' that there was no assurance given the defendant or any inference given to him that the court would sentence the defendant merely to the county jail, and that he knew that if he entered a plea

of "guilty" it was entirely up to the court what sentence he was going to get, and the order must be affirmed.

Another thing worthy of note is that there is not a word in the defendant's affidavit nor in the defendant's testimony before the court to indicate that defendant was not guilty of the charge to which he pleaded guilty or that a trial would result in his acquittal. "The exceptional remedy above referred to was not designed to enable the guilty to escape punishment, but to purify and keep pure the administration of justice, and the same may be utilized upon only a strong and convincing showing of the deprivation of legal rights by extrinsic causes." (*People* v. *Gottlieb,* 25 Cal. App. (2d) 411, 415 [77 Pac. (2d) 489].)

The order is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 21, 1939, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 10, 1939.